Good morning, Your Honors. Good morning, Counsel. Martin Guajardo on behalf of Satnam Kaur Saini and the other petitioners, her children. Counsel, in this one, what really grabbed my attention was that the wife tells a story that's quite different from the husband's story, and those inconsistencies are just begging to be explained. But the husband doesn't come to the hearing, and he doesn't send a letter or a sworn declaration or anything to explain why that's so. Why isn't that enough for the IJ? Well, I think here we need to take a step back and see what happened at that hearing before Judge Simpson. Judge Simpson... In the husband's hearing? The petitioner, the wife. I noticed the name of the... The wife's hearing. So she's in court with her daughters, and she's represented by her first attorney, Sekhon, Attorney Sekhon. And he makes an election to withdraw the applications for asylum. They continue the hearing. Judge Simpson continues the hearing. When they come back, they come back with a new attorney. The new attorney now asks the court to reinstate, if you will, those applications for asylum, so that now we can take a look at what we recognize as 208, 241b, 3b, both the asylum and the withholding. Judge says, no, I'm not going to do that. And I'm not going to do that because your first attorney withdrew the application. Now you're going to be relegated to Article III, Convention Against Torture. Somewhere along the line, you have two different judges taking a look at, one, the husband's case, and that's Judge Keener, and Judge Simpson taking a look at the wife's case and the daughter's. The wife submits the decision of Judge Keener to Judge Simpson, but no more. If we take a look at the administrative record, we will not see that transcript of Judge Keener. We don't know what the testimony is. What do we see in your view? We see only the decision of the judge. And then based on the judge says he said this and he said that, and unless it's been overturned on review, that establishes it. Well, I think that for, well, if I may, just for a moment. I don't know that that establishes simply having the decision of the immigration judge, of immigration judge Keener, that that establishes the findings and fact and conclusions of law for purposes of determining whether there's credibility that you can. Okay, let's say it doesn't. Then why wouldn't it be incumbent on the wife at her hearing to say, no, no, the judge was wrong. My husband really didn't say that. Here's the transcript. It shows that the judge made a mistake. My husband did not really say that. He said something consistent with what I'm saying. And I think not to sound cavalier with the Court, but I think it's incumbent then on both counsel, counsel for the government, counsel for the defense and primary. He has the burden of proof. Well, but if the judge is going to rely on the decision of the judge, if Judge Simpson is going to rely on Judge Keener's decision, then it seems that due process would require for him to be able to say, well, here's Judge Keener's decision, but I have the transcript of what transpired. And if in his testimony he doesn't see it, suppose he surprised her with it. Suppose he never mentioned it during the proceedings, and then when it's all over in the decision, he relies on the transcript of the oral decision. It seems to me that the wife could then move to reopen and say, no, no, the judge thought there was an inconsistency between what my husband said and what I said because he relied on the transcript of the oral decision of the I.J., but the I.J. in my husband's case was mistaken about what my husband had testified. Here's the transcript. Here's what my husband testified. I think that my only response to that would be I'm going to fast forward to the end of my 10 minutes and ask the Court to allow me time. I just read a decision that was published yesterday with the date of April 13th. And I think that the court, the site on it is, as it appears off of the daily opinion services, 05-CDOS-3127. And I think that this decision, and if I'm permitted, I'm going to ask for an opportunity to submit a memo. Yes. What you should do is when you're done, check with the defendant, the deputy clerk, and fill out a gum sheet with sufficient copies for everybody. I will, Your Honor. And I apologize. The decision just came out. I just picked up the paper. That's all right. But I think that it addresses the question that you posed for me this morning, and that is I think that if we look at factually what was being represented by her husband before Judge Keener, he's saying to her, well, I was arrested three or four times. And they all have to are arrests that occur post the date that she's testifying that he's already here in the United States. You're going to say, yes, there's a problem. There's a big credibility problem. But I think that what we need to do. Yeah, you think these people are making it all up. Absolutely. It's difficult not to fall into the, if you will, not to become jaded with so many of these cases. I think that what we can see from Judge Simpson's decision here, as you read this administrative record, Judge Simpson, it almost seems, I think the second or third, towards the end, the second or last page of his decision, you can almost hear him just sound almost exasperated. He said, you know, either he was lying or you're lying or all of you are lying. I mean, you can just, you can hear him come through that oral decision because there are so many different versions given. And the credibility issue is always the core issue. I think that here our focus is if you're going to rely on that decision, if Judge Simpson's going to rely on Judge Keener's decision, one of two things should happen for us in order to have a full and fair hearing. Let's get the transcripts. Let's take a look at them and have an opportunity for both sides to be able to question the response as to what her husband testified to. There may be a clarification. But with just solely the decision of the immigration judge. Was there an opportunity at the hearing to have the transcript brought into evidence? She brought the Keener decision in. Was there an opportunity for the other side to have it supplemented by the actual transcript? I think there may have been. I think the short answer is if the transcript was available, the answer would be yes. But if you take a look at the excerpts of record that we've provided, we've provided what would be the decision of the Board of Immigration Appeals as to his case. And the Board of Immigration Appeals dismisses the appeal simply because there was no brief filed. So typically the way it works, the mechanics, you file your notice of appeal, you wait for a briefing schedule, and at some point you'll have transcripts. Notwithstanding, you may or may not file a brief at some later date. The question then would come is, was there a time before at one of these hearings or before the final decision by Judge Simpson that those transcripts would have been available? Let's say that this argument is well taken. Then to ask about prejudice, I suppose I'd want to know, what's in the transcript that explains away the problem or shows that the husband didn't really testify to that? Have we been given the transcripts from the husband's hearing that showed that the I.J. in the husband's hearing was mistaken? The answer is no. I mean, there's been a lot of time as subsequent to the wife's hearing when those transcripts could have been dug up and something could have been found in them that shows a mistake has been made here. We've been brought in at the end of the fourth quarter, if you will, Judge, as far as our representation. That was for a long time out. And so I apologize. And certainly this Court can't consider something that wasn't brought up to the Board of Immigration Appeals. I just hate to reverse on the basis that there's something in those transcripts that would show this was all a mistake, and nobody showed me anything in the transcripts that shows it was all a mistake. If I may, and maybe I'm getting a little close to the edge of the table here, but I'm going to ask the Court to consider the following. Former consul was present here, and the question to former consul was, does it sound almost just like you can't believe it if one person is here, one family member is here. It doesn't sound that way to me. It sounds like an empty chair defense to me. I mean, what I used to do when I was defending, if there was somebody else who was involved and was not a co-defendant, I'd just blame it all on him. And that's what it sounds like. Blame it all on that transcript that isn't there. But in this case, what we have here is that the husband left, and almost immediately after he left, the wife picked up, sold whatever she had, and took the kids and took that 12-year-old at that time out of the country, and it was back about eight years ago. Isn't that what she did? That's exactly what she did. No one stayed back home. No one stayed over there waiting to see what was going to happen. They all left. Someone lost their life. We know that from the transcript. We know what they testified to. The question is the dates don't quite align themselves for us. And that remains an issue, and I think it's something that could have been taken care of by the trial judge simply by saying, I want that transcript, counsel. Get that transcript. And we're going to. We've continued this hearing six times. It's not going to prejudice anyone to go ahead and get that transcript. And that wasn't done. Thank you. Thank you, counsel. You have consumed all of your time. We'll hear from the government now. Good morning, Your Honors. Good morning. May it please the Court. My name is Song Pari, counsel for Attorney General. The immigration judge in this case probably properly denied petitioners' request for the protection under Convention Against Torture, and certainly substantial evidence supports that average credibility finding.  Thank you. Thank you. Thank you. I'm going to start by saying that the Court dismissed petitioners' petition currently before the Court. There are primarily two issues before the Court today. One, whether the immigration judge in the incident case properly relied on the immigration judge in the petitioner's husband's case in reaching his average credibility conclusion, and, two, whether the facts, in fact, support the average credibility determination. And, in fact, the response to both would be yes, Your Honor. The immigration judge in this case properly relied on a document that was submitted by the petitioner in support of her own application for relief. All right. Well, what about Mr. Guajardo's concern about the fact that the transcript was never in front of the second I.J.? Your Honor, as Your Honors noted earlier, this immigration proceeding has been going on for a significant amount of time, and there were several opportunities during which time petitioners could have offered any additional evidence, including the immigration judge's transcript, for consideration during the course of their hearing. Is there a transcript, first of all? I would presume that there is, Your Honor, because since there was a full immigration asylum hearing that took place before the husband. If you look through the transcript itself of the current proceedings before regarding the current petitioners, there are several instances during the course of several different dates during which the immigration judge asked petitioners regarding her husband's case, regarding the decision that had been rendered in that denial, as well as asking her directly, is there any way you can explain this? Can you tell me how you can reconcile these two completely different stories that are being told to the immigration court? Now, these questions came up after the petitioner had introduced the Keillor, Judge Keillor decision? Yes, Your Honor. And is there anything in the record to indicate that the IJ would have had that available if it had not been brought in by the petitioner? Would have had the entire... Well, in reading through this thing, I was wondering, I asked myself, why did she put that in? Why did the petitioner put that document in the record, number one, and in this huge bureaucracy with the thousands of cases they have, particularly from Punjab, why would anybody believe they would have discovered this other case anyway if she hadn't have brought it in? Well, there is a cover letter that was attached to the submission of the other immigration judge's decision that was submitted to the INS asylum officer, and in that letter it indicates that, I believe that they were submitting it at the request of the INS officer in consideration of petitioner's asylum application. So that's how that came in. But once it was made a part of the record, the current immigration judge in these proceedings properly relied on that document that had nevertheless been submitted by petitioner in considering the request for release that was in front of him regarding the current petitioners in this case. So government would submit, Your Honor, that there was the current immigration judge properly relied on the collateral immigration judge's decision in reaching his average credibility determination. Now, what is your name again? I'm looking at the docket sheet, and James... I'm sorry, Your Honor. I was... I don't have the updated. You're Ms. Park? Yes. Okay. Thank you. I was assigned this case. We have to get the counsel on our records. Mr. Huno was originally assigned to argue this case, but I was, at the very last minute, assigned to argue it a couple days ago, so... Anything further? No, Your Honor. Just that the substantial evidence in this record, government believes, fully supports the immigration judge's determination, and we would request that you deny the petition for review. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in Davinder Singh v. Gonzalez. Thank you.
judges: Goodwin, O'scannlain, Kleinfeld